**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
NURIA TORRES, Individually and on behalf
of all others similarly situated,

                              Plaintiff,

                 - against -

MIDLAND CREDIT MANAGEMENT, INC.,

                              Defendant.
-------------------------------------------------------X

**FILED**
**CLERK**

5/21/2018 4:50 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**MEMORANDUM AND**
**DECISION**

17-cv-2794 (SJF)(ARL)

**FEUERSTEIN, District Judge:**

I.     **INTRODUCTION**

    Plaintiff Nuria Torres ("Plaintiff") brings this putative class action against Defendant

Midland Credit Management, Inc. ("Defendant") under the Fair Debt Collection Practices Act,

15 U.S.C. § 1692 *et seq*. (the "FDCPA").  *See generally* Complaint ("Compl.") Docket Entry

["DE"] 1.  Defendant has moved to dismiss the Complaint pursuant to Federal Rules of Civil

Procedure 12(b)(6) for failure to state a claim.  *See* Notice of Motion to Dismiss [DE 14].

Plaintiff opposes the motion.  For the reasons that follow, Defendant's motion is granted.

II.    **BACKGROUND**

    **A.  Factual Background**

    The following facts, which are assumed to be true for purposes of adjudicating the instant

motion, are taken from the Complaint as well as the Collection Letter attached thereto.

Plaintiff, an individual residing in the State of New York, is a "consumer" as that term is defined by the FDCPA since she is "allegedly obligated to pay a debt." Compl. ¶¶ 5-6.[1] Defendant is a "debt collector" within the meaning of the FDCPA since it is primarily engaged in "the collection of debts allegedly owed by consumers." *Id*. ¶¶ 8-9.[2]

Plaintiff incurred a debt "on an account with Verizon New York, Inc." *Id*. ¶¶ 10-11. As part of its efforts to collect this debt, Defendant sent Plaintiff a letter on May 25, 2016, *see id*. Exhibit ("Ex.") 1 (the "Collection Letter"), which identifies "Verizon New York, Inc." as the entity to whom the debt is owed and sets forth a "Balance Due" of "$759.18." *Id*. The body of Collection Letter includes the following language:

> Dear Nuria,
>
> Congratulations! You have been **pre-approved** for a discount program designed to save you money. Act now to maximize your savings and put this debt behind you by calling (800) 282-2644. Pay online today at www.midlandcreditmanagementonline.com.[3]

*Id*. (emphasis in original). Notwithstanding the date of the Collection Letter, Plaintiff states that Plaintiff's "last payment on the account was [made] prior to 2011" and that "[t]he statute of limitations for the Debt, pursuant to 47 U.S.C. § 415(a), is two years" which, according to Plaintiff, "began to accrue prior to 2011." *Id*. ¶¶ 13-15. Because, in Plaintiff's view, the letter

---

[1]     The term "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3)

[2]     The term "debt collector" means "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." 15 U.S.C. § 1692a(6).

[3]     Following this paragraph, the Collection Letter provided Plaintiff with three alternative discount programs: (1) 60% Off (one time payment); (2) 20% Off (6 Monthly Payments); or (3) "Monthly Payments As Low As $50 per month." Compl., Ex. 1.

was sent "after the statute of limitations expired," *id.* ¶ 17, the letter violates the FDCPA since it

fails to provide any indication to Plaintiff that:  (1) "no legal action could be undertaken to

attempt to recover the debt;" (2) "any partial payment by Plaintiff may result in the revival of

Plaintiff's otherwise time-barred debt;" and (3) "the Letter fails to provide the notifications

required by 22 N.Y.C.R.R. § 1.3.[4]  *Id.* ¶¶ 22-24.  Because of these "omissions . . . the Letter

would mislead the least sophisticated consumer to believe that the time-barred debt is legally

enforceable; and therefore, Defendant violated 15 U.S.C. §1692e(2)(A).  *Id.* ¶ 27.  In addition,

"the Letter would mislead the least sophisticated consumer to believe that making a partial

payment would not revive the otherwise time-barred debt; and therefore, Defendant violated

15 U.S.C. §1692e."  *Id.* ¶ 28.

## III.  DEFENDANT'S MOTION TO DISMISS

### A.  Standard of Review

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally

construe the claims, accept all factual allegations in the complaint as true, and draw all

reasonable inferences in favor of the plaintiff.  *See Aegis Ins. Servs., Inc. v. 7 World Trade Co.,*

*L.P.*, 737 F.3d 166, 176 (2d Cir. 2013) (quotations and citation omitted); *Grullon v. City of New*

---

[4]      The Complaint erroneously cites 22 N.Y.C.R.R. § 1.3.  The citation to which the Complaint should refer is 23 N.Y.C.R.R. § 1.3 which is a New York Department of Financial Services regulation setting forth rules for third-party debt collectors and debt buyers including requiring the disclosure to consumers when the statute of limitations on a debt has expired.  *See* 23 N.Y.C.R.R. § 1.3.  Significantly, "[t]he rules are not privately enforceable" but are "state regulations enforceable by the Department, and may be enforceable by other regulators or prosecutors."  *See Summary of new rule: Debt Collection by Third-Party Debt Collectors and Debt Buyers Regulation—23 NYCRR 1*, attached as Ex. A to the August 28, 2017 Declaration of Han Sheng Beh in Support of Motion to Dismiss ("Han Decl.").  In addition, although the Second Circuit has not weighed in, courts within this district have found that, in general, "an alleged violation of state or local law is insufficient to state a claim under the FDCPA."  *Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F. Supp. 2d 200, 207 (E.D.N.Y. 2009), *as amended* (Dec. 4, 2009); *see McDowell v. Vengroff, Williams & Assocs., Inc.*, 04–CV–1068, 2006 WL 1720435, at *1 (E.D.N.Y. Jun. 21, 2006) (adopting Report and Recommendation); *see also Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996) ("We disagree with Wade that debt collection practices in violation of state law are *per se* violations of the FDCPA.").

*Haven*, 720 F.3d 133, 139 (2d Cir. 2013).  The plaintiff must satisfy "a flexible 'plausibility standard.'"  *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007).  The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570; *see Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (holding that a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'") (quoting *Twombly*, 550 U.S. at 555).

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss.  District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 679; *see id.* at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Twombly*, 550 U.S. at 555)).  Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a [d]efendant has acted unlawfully." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

In adjudicating a Rule 12(b)(6) motion to dismiss, the Court must limit itself to facts alleged in the complaint, which are accepted as true; to documents attached to the complaint as exhibits or incorporated in the complaint by reference; to matters of which judicial notice may be taken; or to documents whose terms and effect are relied heavily upon in the complaint and, thus, are rendered "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *see also ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014).

## B. The Parties' Arguments

The crux of Defendant's argument is that Plaintiff's reliance upon the two-year statute of limitations set forth in 47 U.S.C. § 415(a) is misplaced since this statute of limitations "does not apply to cellular telephone debts like the account at issue in this case." Midland's Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint ("Def.'s Mem.") at 3. Relying almost exclusively on the Fifth Circuit's decision in *Castro v. Collecto Inc*., 634 F.3d 779 (5th Cir. 2011), Defendant's position is that "§ 415(a) only applies to actions to collect on tariff charges filed with the Federal Communications Commission ("FCC") and does not apply to cellular telephone debt." *Id.* Thus, based upon the reasoning in *Castro*, Defendant concludes that because "Plaintiff's debt originated from 'a personal cellular telephone' that is not regulated by tariffs filed with the FCC . . . New York's six-year statute of limitations for collection of a contractual debt applies." *Id.* at 5 (citing N.Y.C.P.L.R. § 213). Accordingly, because the "Settlement Letter was [ ] sent prior to the expiration of the statute of limitations to collect on the Account . . . Plaintiff fails to state a claim under the FDCPA." *Id.* Alternatively, Defendant asserts that (1) even if the two-year statute of limitations was applicable, "23 N.Y.C.R.R. § 1.3

does not provide for a private cause of action" and (2) because "a debt collector does not violate the FDCPA by simply requesting repayment, as long as there is no threat of litigation" no violation occurred here since "[t]he Settlement Letter makes no threats . . . related to litigation." *Id.* at 7-8. Thus, "even if the statute of limitations had expired before the Settlement Letter was sent, Plaintiff's FDCPA claim must still be dismissed." *Id.* at 8.

In opposition, Plaintiff states that "the term 'lawful charges' as [ ] used in 47 U.S.C. § 415(a) is plain and unambiguous and, therefore, should be accorded its ordinary meaning" and that upon "making such a finding . . . the Court's inquiry should end there." Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp'n") at 9. Alternatively, Plaintiff "urges the Court to reject the Fifth Circuit's holding in *Castro*" since, "the Fifth Circuit violated the first rule of statutory construction, by searching for an ambiguity where none existed . . . [and by] interpreting the statute in such a way as to render it superfluous." *Id.* at 9, 11. In addition, Plaintiff clarifies that she is "not assert[ing] a cause of action alleging a violation of 23 NYCRR § 1.3" and that reference to this regulation "was intended to do nothing more than illustrate the ways in which Defendant could have articulated the requisite disclaimers so as to render the Letter neither false nor misleading to the least sophisticated consumer. . . ." *Id.* at 15.

In reply, Defendant reasserts that "*Castro* makes clear that [Defendant] did not violate the FDCPA when it sent the Settlement Letter because New York's six-year statute of limitations applies to [Plaintiff's] debt." Midland's Reply Memorandum of Law in Further Support of its Motion to Dismiss Plaintiff's Complaint ("Def.'s Reply") at 2. While Defendant concedes that

*Castro* is not binding upon this Court, it nevertheless asserts that *Castro* is "well-reasoned" and has not otherwise "been criticized or challenged by any other court." *Id*. at 4.[5]

## C. Applicable Law

### 1. The Doctrine of Federal Preemption

"It is a familiar and well-established principle that the Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates state laws that 'interfere with, or are contrary to,' federal law." *Hillsborough Cty., Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712, 105 S. Ct. 2371, 2375, 85 L. Ed. 2d 714 (1985) (quoting *Gibbons v. Ogden*, 9 Wheat. 1, 211, 6 L. Ed. 23 (1824)); *see* U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land. . . ."). This principle — that state law must yield to federal law when the two find themselves in conflict — is generally referred to as the doctrine of preemption, which logically derives from the Supremacy Clause itself. *See Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152, 102 S. Ct. 3014, 3022, 73 L. Ed. 2d 664 (1982) ("The pre-emption doctrine [ ] has its roots in the Supremacy Clause. . . ."); *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 312 (E.D.N.Y.

---

[5] Defendant, for the first time, argues that it "is not a telecommunication carrier under the [Federal Communications Act] and Midland is not collecting on behalf of Verizon" and therefore the two-year statute of limitations in 47 U.S.C. § 415(a) "would not apply to this debt because [Defendant] is not a telecommunications carrier." The Court declines to consider or address this argument in the first instance since "[t]he law in the Second Circuit is clear that arguments or requests for relief raised for the first time in reply briefs need not be considered." *In re Various Grand Jury Subpoenas*, No. 12 MISC. 381, 2017 WL 361685, at *9 (S.D.N.Y. Jan. 24, 2017), *modified*, 2017 WL 564676 (S.D.N.Y. Feb. 13, 2017) (citing *ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 100 n.16 (2d Cir. 2007) ("[W]e decline to consider an argument raised for the first time in a reply brief.")); *see Rowley v. City of New York*, 00 Civ. 1793, 2005 WL 2429514, at *5 (S.D.N.Y. Sept. 30, 2005) ("This Circuit has made clear it disfavors new issues being raised in reply papers."). This discretionary rule is grounded on the practical consideration that "if a party raises a new argument in a reply brief the opposing party may not have an adequate opportunity to respond to it." *Sacchi v. Verizon Online LLC*, 2015 WL 1729796, at *1 n.1 (S.D.N.Y. Apr. 14, 2015) (citations omitted). Additionally, "the Court will not evaluate arguments that are so drastically underdeveloped, particularly when [some of those arguments] are raised only in a footnote." *Levy v. Young Adult Inst., Inc.*, 103 F. Supp. 3d 426, 441 (S.D.N.Y. 2015) (citing *Diesel v. Town of Lewisboro*, 232 F.3d 92, 110 (2d Cir. 2000) (footnote in primary brief was insufficient to raise argument)). In deciding the instant motion, the Court will assume *arguendo* that since Defendant purchased the debt from Sprint it now stands in Sprint's shoes and shall be treated as a "carrier" for purposes of collecting Plaintiff's debt.

2005) ("Under the doctrine of preemption, a corollary to the Supremacy Clause, any state or municipal law that is inconsistent with federal law is without effect.") (quoting *Greater New York Metro. Food Council, Inc. v. Giuliani*, 195 F.3d 100, 104–05 (2d Cir.1999) (abrogated on other grounds)); *Spinrad v. Comair, Inc.*, 825 F. Supp. 2d 397, 403 (E.D.N.Y. 2011) ("The preemption doctrine is rooted in the Supremacy Clause of the Constitution.") (quoting *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 313 (2d Cir. 2005)).

The Supreme Court has characterized issues of preemption as statutory since "analysis of pre-emption issues depends primarily on statutory and not constitutional interpretation." *City of Philadelphia v. New Jersey*, 430 U.S. 141, 142, 97 S. Ct. 987, 988, 51 L. Ed. 2d 224 (1977) (per curiam); *Douglas v. Seacoast Prod., Inc.*, 431 U.S. 265, 271–72, 97 S. Ct. 1740, 1745, 52 L. Ed. 2d 304 (1977) ("Although [a] claim [of preemption] is basically constitutional in nature, deriving its force from the operation of the Supremacy Clause, Art. VI, cl. 2, it is treated as 'statutory' for purposes of our practice of deciding statutory claims first to avoid unnecessary constitutional adjudications."); *Swift & Co. v. Wickham*, 382 U.S. 111, 120, 86 S. Ct. 258, 263–64, 15 L. Ed. 2d 194 (1965) ("Any such pre-emption or conflict claim is of course grounded in the Supremacy Clause of the Constitution: if a state measure conflicts with a federal requirement, the state provision must give way.  The basic question involved in these cases, however, is never one of interpretation of the Federal Constitution but inevitably one of comparing two statutes."). Claims involving issues of preemption are "of course [ ] statutory in the sense that [they] depend[ ] on interpretation of an Act of Congress, and like any other statutory decision, the result . . . is subject to legislative overruling." *Douglas*, 431 U.S. at 272 n. 6, 97 S. Ct. at 1745, 52 L. Ed. 2d 304.

It logically follows that "[i]n every preemption case . . . [a court must] ask whether Congress intended to exercise this important and sensitive power: 'the purpose of Congress is the ultimate touchstone.'" *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 725 F.3d 65, 96 (2d Cir. 2013) (quoting *Wyeth v. Levine*, 555 U.S. 555, 565, 129 S. Ct. 1187, 173 L. Ed. 2d 51 (2009) (internal quotation marks omitted)); *U.S. Smokeless Tobacco Mfg. Co., LLC v. City of New York*, 703 F. Supp. 2d 329, 336 (S.D.N.Y. 2010) ("[T]he purpose of Congress is the ultimate touchstone in every preemption case. Therefore, any understanding of the scope of a preemption statute must rest primarily on 'a fair understanding of *congressional purpose.*'") (internal quotations and citation omitted) (emphasis in original); *see also Metro. Taxicab Bd. of Trade v. City of New York*, 633 F. Supp. 2d 83, 100 (S.D.N.Y. 2009), *aff'd*, 615 F.3d 152 (2d Cir. 2010) ("Preemption claims turn on Congress' intent, so the Court must review Congress' goals in enacting the [Energy Policy and Conservation Act] and the relevant text of the provision in question."). Congressional intent in turn "may be 'explicitly stated in the statute's language or implicitly contained in its structure and purpose.'" *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516, 112 S. Ct. 2608, 2617, 120 L. Ed. 2d 407 (1992) (quoting *Jones v. Rath Packing Co*., 430 U.S. 519, 525, 97 S. Ct. 1305, 1309, 51 L. Ed. 2d 604 (1977)). In either case, "Congress' intent . . . primarily is discerned from the language of the pre-emption statute and the statutory framework surrounding it. Also relevant, however, is the structure and purpose of the statute as a whole, as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486, 116 S. Ct. 2240, 2250–51, 135 L. Ed. 2d 700 (1996) (internal citations omitted).

Preemption analysis is further informed by the notion that because "States are independent sovereigns in our federal system, [courts] have long presumed that Congress does not cavalierly pre-empt state-law causes of action." *Id*. at 485, 116 S. Ct. at 2250, 135 L. Ed. 2d 700; *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449, 125 S. Ct. 1788, 1801, 161 L. Ed. 2d 687 (2005). Therefore, "[i]n areas of traditional state regulation, [courts] assume that a federal statute has not supplanted state law unless Congress has made such an intention "'clear and manifest.'" *Bates*, 544 U.S. at 449, 125 S. Ct. at 1801, 161 L. Ed. 2d 687 (quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 655, 115 S. Ct. 1671, 131 L. Ed. 2d 695 (1995)); *see Medtronic, Inc.*, 518 U.S. at 485, 116 S. Ct. at 2250, 135 L. Ed. 2d 700 ("In all pre-emption cases, and particularly in those in which Congress has legislated . . . in a field which the States have traditionally occupied, [courts] start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.") (internal quotations and citation omitted). This so called presumption against preemption thus generally pertains to matters involving health, welfare and safety — areas traditionally within a State's police powers. *See Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 151, 121 S. Ct. 1322, 1330, 149 L. Ed. 2d 264 (2001) ("There is indeed a presumption against pre-emption in areas of traditional state regulation[.]"); *Bates*, 544 U.S. at 449, 125 S. Ct. at 1801, 161 L. Ed. 2d 687 ("In areas of traditional state regulation, we assume that a federal statute has not supplanted state law unless Congress has made such an intention clear and manifest.") (internal citation omitted); *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 314 (2d Cir. 2005) ("There is typically a presumption against preemption in areas of regulation that are traditionally allocated to states and are of particular local concern.").

However, this "presumption against federal preemption disappears [ ] in fields of regulation that have been substantially occupied by federal authority for an extended period of time." *Wachovia Bank, N.A.*, 414 F.3d at 314; *see Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178, 183 (2d Cir. 2005); *Edwards v. Macy's Inc.*, No. 14 CIV. 8616, 2016 WL 922221, at *4 (S.D.N.Y. Mar. 9, 2016); *New York Bankers Ass'n, Inc. v. City of New York*, 119 F. Supp. 3d 158, 182 (S.D.N.Y. 2015); *see also New York SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 106–07 (2d Cir. 2010) ("Even assuming that Chapter 251 is entitled to the presumption against preemption because zoning and land use are matters within a local government's traditional police powers, the presumption is overcome because Chapter 251 goes beyond those areas into the area of technological and operational standards [which are regulated by the FCC].").

"Federal preemption of state law can be express or implied." *Goodspeed Airport LLC*, 634 F.3d at 209; *see Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98, 112 S. Ct. 2374, 2383, 120 L. Ed. 2d 73 (1992); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383, 112 S. Ct. 2031, 2036, 119 L. Ed. 2d 157 (1992). Within implied preemption are two sub-species — field preemption and conflict preemption. *See Goodspeed Airport LLC*, 634 F.3d at 210, n. 4 (recognizing that there are "three recognized forms of preemption: express preemption and the two types of implied preemption, "field" and "conflict"); *Gade*, 505 U.S. at 98, 112 S. Ct. at 2383, 120 L. Ed. 2d 73; *see also Altria Grp., Inc. v. Good*, 555 U.S. 70, 76–77, 129 S. Ct. 538, 543, 172 L. Ed. 2d 398 (2008) ("Pre-emptive intent may [ ] be inferred if the scope of the statute indicates that Congress intended federal law to occupy the legislative field, or if there is an actual conflict between state and federal law.") (citing *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287, 115 S. Ct. 1483, 131 L. Ed. 2d 385 (1995)). However, these categories are not "rigidly distinct"

since "field pre-emption may be understood as a species of conflict pre-emption: A state law that falls within a pre-empted field conflicts with Congress' intent (either express or plainly implied) to exclude state regulation." *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 n. 5, 110 S. Ct. 2270, 2275, 110 L. Ed. 2d 65 (U.S. 1990); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 n. 6, 120 S. Ct. 2288, 2294, 147 L. Ed. 2d 352 (2000)

*see Spinrad*, 825 F. Supp. 2d at 404.

"Express preemption arises when a federal statute expressly directs that state law be ousted." *Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 101 (2d Cir. 2009). "When a federal law contains an express preemption clause, [the court must] 'focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent.'" *Chamber of Commerce of the U.S. v. Whiting*, 563 U.S. 582, 594, 131 S. Ct. 1968, 1977, 179 L. Ed. 2d 1031 (2011) (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S. Ct. 1732, 123 L. Ed. 2d 387 (1993)); *see also Arizona v. United States*, 567 U.S. 387, 399, 132 S. Ct. 2492, 2500–01, 183 L. Ed. 2d 351 (2012) ("There is no doubt that Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision.").

Where Congress has not included an express preemption clause in the federal statute itself, a court "must consider whether the federal statute's structure and purpose, or nonspecific statutory language, nonetheless reveal a clear, but implicit, pre-emptive intent." *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 31, 116 S .Ct. 1103, 134 L. Ed. 2d 237 (1996). Such an implicit intent may be found where Congress has endeavored to either occupy the entire field or where the federal statute and state statute are in irreconcilable conflict with one another. *See Gade*, 505 U.S. at 98, 112 S. Ct. at 2383, 120 L. Ed. 2d 73 ("Absent explicit pre-emptive language, we have recognized at least two types of implied pre-emption: field pre-emption,

where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, and conflict pre-emption, where compliance with both federal and state regulations is a physical impossibility[.]") (internal quotations and citation omitted); *Arizona v. United States*, 567 U.S. at 399, 132 S. Ct. at 2501, 183 L. Ed. 2d 351 ("The intent to displace state law altogether can be inferred from a framework of regulation 'so pervasive . . . that Congress left no room for the States to supplement it' or where there is a 'federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'") (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S. Ct. 1146, 91 L. Ed. 1447 (1947)) (ellipsis in original); *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 220 (2d Cir. 2008) ("Implied preemption arises when, in the absence of explicit statutory language . . . Congress intended the Federal Government to occupy [a field] exclusively, or when state law actually conflicts with federal law.") (internal citation omitted) (ellipsis and alteration in original); *SPGGC, LLC v. Blumenthal*, 505 F.3d 183, 188–89 (2d Cir. 2007) (recognizing that conflict preemption "occurs when compliance with both state and federal law is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress.") (quoting *United States v. Locke*, 529 U.S. 89, 109, 120 S. Ct. 1135, 146 L.Ed.2d 69 (2000) (internal quotation marks omitted)).

Since the existence of preemption is ultimately always dependent upon Congress' intent, the proper analytical framework involves reviewing the statutory text of the provision at issue and, if necessary, analyzing the structure and purpose of the over-arching legislation encompassing the statutory section in question. *See In re WTC Disaster Site*, 414 F.3d 352, 371 (2d Cir. 2005) ("Since the existence of preemption turns on Congress's intent, we are to 'begin

as we do in any exercise of statutory construction[,] with the text of the provision in question, and move on, as need be, to the structure and purpose of the Act in which it occurs.'") (quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645, 655, 115 S. Ct. 1671, 131 L. Ed. 2d 695 (1995)); *Figueroa*, 864 F.3d at 232 (same); *Air Transp. Ass'n of Am., Inc.*, 520 F.3d at 221 (same).

### D. Application to the Facts

> #### 1. Whether the Two Year Statute of Limitations Set Forth in 47 U.S.C. § 415(a) Applies to the Underlying Debt

The fundamental question at issue is whether the two year statute of limitations as contained in 47 U.S.C. § 415(a) or the six-year statute of limitation as contained in N.Y.C.P.L.R. § 213 applies to the collection of Plaintiff's debt.

47 U.S.C. Section 415(a) reads as follows:

> All actions at law by carriers for recovery of their lawful charges, or any part thereof, shall be begun within two years from the time the cause of action accrues, and not after.

47 U.S.C. § 415(a). Notwithstanding the seemingly straightforward nature of this sentence, there is no language evincing a congressional intent to manifestly preempt state law statutes of limitation concerning the collection of debts related to mobile telephone charges nor has Congress defined the term "lawful charges." Moreover, although Plaintiff takes the position that application of the rules of statutory construction require the Court to "proceed under the assumption that the statutory language, unless otherwise defined, carries its plain meaning. . . ." Pl's Opp'n at 7 (quoting *Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72, 76 (2d Cir. 2015)), such a view ignores the fact that the primary inquiry is not one involving exclusively

statutory construction but instead requires a preemption analysis.[6]  As preemption is always a

matter of congressional intent and as Congress' intent as to the preemptive force of 47 U.S.C.

§ 415(a) is not clearly set forth in the statutory text itself, a reviewing court is obliged to review

the statute's structure, purpose and regulatory framework in order to glean such information.  *See*

*Medtronic, Inc.*, 518 U.S. at 486, 116 S. Ct. at 2250–51, 135 L. Ed. 2d 700 ("Congress' intent . . .

primarily is discerned from the language of the pre-emption statute and the statutory framework

surrounding it.  Also relevant, however, is the structure and purpose of the statute as a whole, as

revealed not only in the text, but through the reviewing court's reasoned understanding of the

way in which Congress intended the statute and its surrounding regulatory scheme to affect

business, consumers, and the law."); *Metro. Taxicab Bd. of Trade v. City of New York*, 633 F.

Supp. 2d 83, 100 (S.D.N.Y. 2009), *aff'd*, 615 F.3d 152 (2d Cir. 2010) ("Preemption claims turn

on Congress' intent, so the Court must review Congress' goals in enacting the [Energy Policy

and Conservation Act] and the relevant text of the provision in question.").

Notwithstanding the searching inquiry generally necessary when facing questions of

preemption, and recognizing the dearth of Second Circuit authority addressing the precise issue

involved here, the Court finds persuasive the reasoning and analysis set forth in *Castro v.

Collecto, Inc.*, 668 F. Supp. 2d. 950 (W.D. Tx. 2009) ("*Castro I*") and *Castro v. Collecto, Inc.*,

634 F.3d 779 (2011) ("*Castro II*").  The *Castro* litigation, similar to the instant action, involved

determining the applicable statute of limitations for a mobile telephone debt.  While Castro

advocated application of the two-year statute of limitations in 47 U.S.C. § 415(a), defendant

claimed that Texas' four-year statute of limitations applied.  Both the lower court as well as the

---

[6]     In *Chen*, the Second Circuit was not faced with a question of preemption but was solely concerned with "the
meaning of the word 'establishment' as it is used in Section 13(a)(3) of the FLSA, which exempts seasonal amusement
and recreational establishments from the FLSA's minimum wage requirements."  *Chen*, 798 F.3d at 75.

Fifth Circuit conducted the requisite preemption analysis and ultimately concluded that Congress had not manifestly intended to preempt the use of Texas' four-year statute of limitations applicable to the collection of debts making defendant's collection efforts timely invoked. *Castro I*, 668 F. Supp. 2d at 978; *Castro II*, 634 F.3d at 788.

In *Castro I*, the district court began its analysis with an exhaustive review of the history and purpose of the Federal Communications Act ("FCA"). *Castro I*, 668 F. Supp. 2d at 962. The court observed that "Congress passed the FCA in 1934 in order to consolidate the regulatory authority of communications services into one agency and to ensure all people of the United States . . . would have access to interstate communication by wire or radio." *Id*. (citing 47 U.S.C. § 151). In order to prevent common carriers from levying unreasonable and discriminatory charges, the FCA "required common carriers to file their schedules of rates with the FCC and to charge customers only those rates on file . . . [h]ence, the filed-rate doctrine came to be applied to the FCA." *Id*.; *see MCI Telecommunications Corp. v. AT&T*, 512 U.S. 218, 230, 114 S. Ct. 2223, 2231, 129 L. Ed. 515 (1906) (recognizing that "rate filing was Congress's chosen means of preventing unreasonableness and discrimination in charges"). Although this traditional regulatory framework proved viable in the early years following the FCA's enactment, in passing the 1993 amendments to the FCA, "[t]he House Conference Report [recognized] 'that market conditions may justify differences in the regulatory treatment of some providers of commercial mobile services'" and that the proposed amendments "'permits the [FCC] some degree of flexibility to determine which specific regulations should be applied to each carrier.'" *Id*. at 968 (quoting H.R. Rep. 103-213 at 490 (1993), *reprinted in* 1993 U.S.C.C.A.N. 1088, 1180). Following the passage of the 1993 amendments, the FCC "exempted [Commercial Mobile Radio Service] providers from filing '[s]chedules of charges, and classifications, practices, and

regulations affecting such charges.'" *Id.* at 969 (quoting 47 C.F.R. § 1.771). In light of the fact that wireless companies and other CMRS providers were no longer required to file a schedule of charges, these providers "no longer accrued 'lawful charges' because, historically, 'lawful charges' were those set in tariffs, which common carriers filed with the FCC . . . [and therefore] by section 415's own language, it no longer applied for the very reason that CMRS providers no longer accrued such 'lawful charges.'" *Id.* at 977. Following the *Castro I* court's in depth review of the FCA's statutory scheme and legislative history, the court concluded that

> Congress did not intend to preempt a CMRS providers' state law remedies when the action does not touch on rates or [market entry] and because the FCC has eliminated the tariff requirement for such providers, the Court concludes section 415 does not apply to a CMRS provider who is attempting to collect a debt from a consumer and is not preemptive. Rather, the state law governing the debt collection action provides the applicable statute of limitations.

*Id.* at 978.

On appeal, the Fifth Circuit in *Castro II* also began its analysis with a review of the FCA's history and structure. The court recognized that under the initial statutory scheme "the term 'lawful charges' was practically interchangeable with the term 'tariffed charges,' because the only charges that any phone company could lawfully collect were those that had been filed with the FCC." *Castro II*, 634 F.3d at 785. However, after reviewing the changes encompassed within the 1993 amendments to the FCA, which, in part, "permitted the FCC to, if it made certain findings, release CMRS providers from various requirements under the FCA, including the requirement of filing tariffs," the court observed that "although Congress and the FCC have drastically changed how a charge is determined to be in accordance with the law it is unclear whether the meaning of the term 'lawful charges' in § 415(a) has expanded accordingly." *Id.* at 786. Since, according to the court, the term "lawful charges" could be interpreted to encompass "charges other than tariffed charges" or "as a term of art meaning only tariffed charges," it

concluded that the term is "ambiguous as to whether it refers only to tariffed charges." *Id*. at 786-87. Given this ambiguity, coupled with the fact that "Congress has not indicated a 'clear and manifest purpose for § 415(a) to preempt state statutes of limitations governing actions under state law to recover non-tariffed charges," the court "decline[d] to interpret the term in such a way that conflict preemption would apply." *Id*. at 787.

In addition to the reasoning set forth in *Castro I* and *Castro II*, also persuasive is the "State Preemption" language set forth in 47 U.S.C. § 332(c)(3). This language, included as part of the 1993 amendments to the FCA, states, in relevant part, that

> Notwithstanding sections 152(b) and 221(b) of this title, no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, *except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services*.

47 U.S.C. § 332(c)(3) (emphasis added). Although the statute itself does not define the "terms and conditions," the legislative history makes clear that

> It is the intent of the Committee that the states still would be able to regulate the terms and conditions of these services. By "terms and conditions," the Committee intends to include such matters as *customer billing information and practices and billing disputes and other consumer protection matters*; facilities siting issues (e.g., zoning); transfers of control; the bundling of services and equipment; and the requirement that carriers make capacity available on a wholesale basis or such other matters as fall within a state's lawful authority. This list is intended to be illustrative only and not meant to preclude other matters generally understood to fall under "terms and conditions."

H.R. REP. 103-111, 261, 1993 U.S.C.C.A.N. 378, 588 (emphasis added); *see Moriconi v. AT & T Wireless PCS, LLC*, 280 F. Supp. 2d 867, 874 (E.D. Ark. 2003) ("the legislative history [of Section 332(c)(3)] supports the finding that Congress specifically intended to reserve for states the right to regulate and resolve such matters as customer billing information and practices

and billing disputes and other consumer protection matters."); *see also Marcus v. AT&T Corp.*, 138 F.3d 46, 54 (2d Cir. 1998) ("[A]bsent some express statement or other clear manifestation from Congress that it intends the complete preemption doctrine to apply, we believe that federal common law *does not* completely preempt state law claims in the area of interstate telecommunications.") (emphasis added).  Therefore, the broad contours of "terms and conditions," which expressly includes billing practices and billing disputes, lends additional support to the view that Congress did not seek to preempt state law statutes of limitations concerning the collection of mobile telephone billing charges.  Moreover, in addition to the "terms and conditions" exception in Section 332(c)(3), the FCA also contains a savings clause which states that nothing in the FCA

> shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.

47 U.S.C. § 414.  Thus, Section 414 provides further evidence that Congress did not intend the FCA to preempt all state law causes of action and attendant statutes of limitations.  *See Marcus*, 138 F.3d at 54 (citing Section 414 and concluding that "[t]he FCA not only does not manifest a clear Congressional intent to preempt state law actions prohibiting deceptive business practices, false advertisement, or common law fraud, it evidences Congress's intent to allow such claims to proceed under state law."); *Freeman v. Burlington Broadcasters, Inc.*, 204 F.3d 311, 317 (2d Cir. 2000) ("In the FCA context . . . the 'complete preemption' doctrine does not apply with respect to state law billing claims and other business practice claims."); *see also Fax Telecommunicaciones Inc. v. AT & T*, 138 F.3d 479, 486 (2d Cir. 1998) ("Fax has pled only state common law claims sounding in contract and tort. That its claims concern the rates and billing practices of a carrier does not afford a basis for removal by the defendant.  In sum, complete preemption removal was not available to AT&T.").

Although Plaintiff relies on *Buford v. Palisades Collection, LLC*, 552 F. Supp. 2d 800, 803 (N.D. Ill. 2008), *Raydos v. Cohen & Slamowitz, LLP*, No. 08-CV-4A, 2009 WL 2929166, at *4 (W.D.N.Y. Sept. 9, 2009) and an unpublished decision in *Taylor v. Convergent Outsourcing, Inc.*, 16-cv-6918 (E.D.N.Y. Sept. 7, 2017), these cases are distinguishable.  In *Buford*, the central question was whether plaintiff's claims were barred pursuant to the Rooker-Feldman doctrine and the doctrine of claim preclusion.  *Buford*, 52 F. Supp. 2d at 804-08.  The *Buford* court's singular reference to 47 U.S.C. § 415(a) was made for the sole purpose of framing plaintiff's allegations.  *Id.* at 803 ("Plaintiffs *allege* that most or all of the lawsuits Palisades brought through the Bowman law firm, the Bowman Partners, and BHLM, were filed more than two years from the date when the debt accrued in violation of 47 U.S.C. § 415(a), which states that the statute of limitations applicable to cellular telecommunications debts is two years from the date of when the debt accrues.") (emphasis added).  Similarly, in *Raydos*, which involved a credit card debt as opposed to a mobile telephone debt, the central question before the court was "whether the *Rooker–Feldman* doctrine or the full faith and credit statute deprives this Court of jurisdiction over this case; and, if the Court had jurisdiction, what the applicable statute of limitations should have been in an underlying state lawsuit. . . ."  *Raydos*, 2009 WL 2929166, at *1.  In distinguishing the facts in *Raydos* from those at issue in *Buford*, the *Raydos* court made a passing reference to 47 U.S.C. § 415(a) and assumed, without analysis, that "Federal law explicitly sets a two-year limitations period for lawsuits aimed at collecting cellular telephone service debts."  *Id.* at *4.  Finally, in *Taylor*, although the court did address the same question at issue here, the procedural posture and standard of review were different which likely led to a different result.  Indeed, *Taylor* involved a motion to amend the complaint and the court applied a "patently frivolous" standard of review and otherwise did not delve into a preemption analysis.

*Taylor*, 16-cv-6918, Slip Op. at 12 (finding that "in the absence of a controlling Second Circuit decision, I cannot at this time conclude that plaintiffs' proposed amendment is patently frivolous" and granting the motion to amend).  Thus, Plaintiff's reliance on these decisions does not compel a different result.

Having thoroughly reviewed both *Castro I* and *Castro II* in conjunction with relevant sections of the FCA and based upon the lack of binding authority in the Second Circuit addressing the question, the Court adopts the reasoning and result reached by the Fifth Circuit in *Castro II* and similarly finds that Congress has not manifestly intended the two-year statute of limitations contained in 47 U.S.C. § 415(a) to preempt New York's six-year statute of limitations governing state actions concerning the collection of a debt arising from a contractual obligation. Therefore, Plaintiff's FDCPA claims, which are all premised upon the theory that the Collection Letter was sent after the two-year statute of limitations set forth in 47 U.S.C. § 415(a) had expired, fail as a matter of law.

## IV.    CONCLUSION

For the reasons set forth herein, Defendant's motion to dismiss the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED.  The Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
        May 21, 2018

                                        /s/ Sandra J. Feuerstein
                                        SANDRA J. FEUERSTEIN
                                        U.S. District Judge